# LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

January 12, 2018

**BY ECF:**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: <u>United States v. Percoco, et al.</u>, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

We represent Peter Galbraith Kelly, Jr. in the above-referenced matter. The Government's opposition to our motion *in limine* confirms that it seeks to elicit irrelevant, unfairly prejudicial, cumulative, speculative, and impermissible lay opinion testimony from at least one of its witnesses, in violation of Federal Rules of Evidence 401, 403, 602, and 701. ("Gov't Resp." (Doc. No. 437-1)). This testimony should be precluded.

To prove its allegation that Ms. Percoco's job was a "low-show" job and that her compensation was a bribe from Mr. Kelly to Mr. Percoco, the Government seeks to call Teacher 1, a lay witness who did not start teaching for the Education Program until eight months *after* Ms. Percoco left. The Government concedes that Teacher 1 had no role in the creation of the Education Program curriculum. (Gov't Resp. at 2). Nonetheless, based on what the Government claims is her "professional background in teaching and curriculum development," the Government proposes to question Teacher 1 regarding (1) the process by which "curricula" *in general* "are created," and (2) how long she believes "it *would have* taken [her] to create the curriculum" for the Education Program.[1] (<u>Id.</u> at 2 (emphasis added)).

---

[1] Because we had understood from the Government that both Teacher 1 and Teacher 2 would be asked to testify about aspects of the Education Program that pre-date their hiring, our motion letter used the defined term "New Teachers" to refer to both of those teachers. In the Government's response, however, it states that only Teacher 1 would be asked about the creation of the Education Program curriculum. (Gov't Resp. at 2 and n.1). The defense assumes, as the Government did not state otherwise, that neither of the New Teachers will be asked to testify about any other aspects of the Education Program that pre-date their hiring (including their opinion on the quality of that work and the amount of time they believe it would have taken to complete). As discussed in our original letter, any such testimony would be impermissible for the same reasons discussed herein with respect to the creation of the curriculum.

# LANKLER SIFFERT & WOHL LLP

January 12, 2018
Page 2

  First, because Teacher 1 has no personal knowledge about the *actual* creation of the Education Program curriculum – and has never even met, much less worked with, Ms. Percoco – any such line of questioning could elicit only impermissible lay opinion testimony, in violation of Rules 602 and 701, and should be precluded.

  Rather than supporting its position, the cases cited by the Government make clear that the proposed testimony is inadmissible. In Bank of China, N.Y. Branch v. NBM LLC, the Second Circuit concluded that a bank employee who had investigated certain financial transactions was properly permitted to give lay testimony regarding his investigation, but should have been precluded from providing "explanations regarding *typical* international banking transactions" or drawing *conclusions* that were "not the result of his investigation," as such testimony was solely the product of his "specialized knowledge" gained through extensive experience in international banking. 359 F.3d 171, 180–82 (2d Cir. 2004) (emphasis added). The Second Circuit reinforced this message in United States v. Cuti, 720 F.3d 453 (2d Cir. 2013), and United States v. Rigas, 490 F.3d 208 (2d Cir. 2007), both of which make clear that, while lay testimony is not barred *solely* by virtue of a witness's specialized knowledge, testimony that is not a product of a witness's personal knowledge of the case is impermissible expert testimony. See Rigas, 490 F.3d at 224–26 (finding fact witness accountant, who spent twenty months correcting a company's books and records, was properly allowed to summarize those documents and opine on the effects of reclassifications, but noting that if his testimony had not been a product of his investigation, but rather reflected his specialized knowledge, then it would have been impermissible expert testimony); cf. Cuti, 720 F.3d at 458–60 (holding that lay testimony of accountants regarding how their treatment of certain accounting transactions would have changed if they had been given additional information was permissible where both accountants were "personally familiar with the accounting of the transactions at issue").[2]

  The Government tries to use Cuti and Rigas to suggest that Teacher 1's review of parts of the curriculum, *after* it was completed, somehow gives her sufficient personal knowledge to testify as to the circumstances of its creation, which occurred *before* she was hired. Teacher 1's experience teaching the curriculum may give her personal knowledge as to the lessons' content, but this after-the-fact review gives her no basis to opine on events in which she did not participate.

---

[2]  The other cases cited by the Government are not to the contrary. For example, in United States v. Yannotti, the cooperating witness's loan sharking testimony was proper because "it derived from his direct participation in the . . . charged enterprise." 541 F.3d 112, 125 (2d Cir. 2008). And in United States v. Myers, the police officer's lay opinion that burn marks were caused by a stun gun was proper because it was drawn not just from his experience in the police force but also from his personal observation of the marks on the inmate's back a few days after the alleged incident. 972 F.2d 1566, 1570–71, 1577 (11th Cir. 1992). The officer did not testify about how stun gun injuries are caused in *general* or how that stun gun injury, which he had not witnessed, *would have* been caused; he merely identified what he saw.

## LANKLER SIFFERT & WOHL LLP

January 12, 2018
Page 3

Indeed, district courts in this Circuit have barred lay witnesses from doing what the Government proposes here, namely, presenting their views as to "what *should have been done*, . . . what is customary in business practice, or . . . what [their] training and experience tell [them] about appropriate conduct in these cases . . . ." In re Perry H. Koplik & Sons, Inc., 382 B.R. 599, 603 (Bankr. S.D.N.Y. 2008) (emphasis in original); see also Ferrari Club of America, Inc. v. Bourdage, 12-CV-6530 (EAW), 2017 WL 1498080, *3–4 (W.D.N.Y. Apr. 25, 2017) (noting agreement with In re Perry H. Koplik and concluding that, because accountant "was not an employee" of the company, did not "have firsthand knowledge of and/or was not involved in the compilation of the records he reviewed," and would address topics that "definitively crosse[d] into expert territory, . . . the majority of [his] testimony [was] impermissible as lay testimony"); In re MarketXT Holdings, Corp., 04-BR-12078 (ALG), 2011 WL 1422012 (Bankr. S.D.N.Y. Jan. 7, 2011) ("[L]ay opinion testimony is admissible *only when based on the witness' direct personal experience*, whether or not the expertise of the witness aided his perceptions, and any testimony that is primarily a description of *industry custom* or an *analysis based on specialized knowledge* is excludable where the witness has not been qualified as an expert." (emphasis added) (citing Bank of China, 359 F.3d at 182, and In re Perry H. Koplik, 382 B.R. at 599)).

Just as importantly, Teacher 1's proposed opinion testimony is irrelevant because the Government would have her define the Education Program's curriculum in a way that is demonstrably false. The Government claims that the curriculum for the Education Program "is essentially two relatively short PowerPoint presentations" and that Teacher 1 could easily review the presentations without reliance on her specialized knowledge. (Gov't Resp. at 2). But this is directly contradicted by the Government's own exhibits. The documentary evidence in this case shows that, while PowerPoint presentations were created to engage the students during the lessons, Ms. Percoco helped to prepare several other materials (including lesson outlines), which, together with the PowerPoints, constituted the curriculum. Teacher 1's lay opinion as to how long it would have taken her to gather photos for the PowerPoint presentations is therefore irrelevant and impermissible, in violation of Rules 401 and 701(b), because it offers the jury no assistance in determining how long Ms. Percoco and her colleagues *actually* spent creating the entire curriculum – including, but not limited to, determining the lesson objectives, considering different formats to present the lessons most effectively, and finding age-appropriate and engaging ways to convey the information to the students.

Finally, the Government's response completely fails to address the fact – raised in our initial letter – that Teacher 3, who is on the Government's final witness list and who *actually* worked on the Education Program curriculum with Ms. Percoco, will provide admissible testimony about the creation of the curriculum. She will presumably explain how long the curriculum took to develop, and why that process took as long as it did. Under circumstances where the Government has a witness who can testify about what *actually* happened, Teacher 1 can add nothing other than impermissible opinion testimony as to what *would have* happened, drawn solely from her view of a typical curriculum development process. Indeed, having both testify will only serve to confuse the jury with speculative testimony, in violation of Rule 403, and unfairly impair the defense's ability to conduct a proper cross-examination on this topic.

LANKLER SIFFERT & WOHL LLP

January 12, 2018
Page 4

\* \* \*

      In sum, Mr. Kelly respectfully requests that the Court preclude the irrelevant, unfairly prejudicial, cumulative, speculative, and impermissible opinion testimony that the Government offers through Teacher 1 regarding the creation of the Education Program curriculum, including (1) how curricula are *typically* created and (2) how long it *would have* taken Teacher 1 to create a curriculum she did not create.  The Court should further preclude any opinion testimony by either of the New Teachers – or any other lay witness – regarding work for the Education Program about which they have no personal knowledge.

      Respectfully submitted,

      LANKLER SIFFERT & WOHL LLP

      By: /s/ Daniel M. Gitner

      Daniel M. Gitner
      Samantha J. Reitz

**CC**:

All Counsel (Via ECF)