# LANKLER SIFFERT & WOHL LLP
### ATTORNEYS AT LAW

500 FIFTH AVENUE  
NEW YORK, N.Y. 10110-3398  
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399  
TELEFAX (212) 764-3701

February 13, 2018

**BY ECF:**

Honorable Valerie E. Caproni  
United States District Court  
Southern District of New York  
40 Foley Square  
New York, NY 10007

    Re: <u>**United States v. Percoco, et al.**</u>, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    We write on behalf of Peter Galbraith Kelly, Jr., and respectfully submit this letter seeking reconsideration of two evidentiary rulings made during the cross-examination of Todd Howe.

## **BKX 162**

    <u>First</u>, we respectfully request that the Court reconsider the preclusion of BKX 162 on the ground of hearsay. (Tr. 3354:8–24).

    This email is admissible not for its truth but as circumstantial evidence of Mr. Howe's state of mind – his desire to deceive Mr. Kelly. The Second Circuit has "recognized that 'the mere utterance of a statement, without regard to its truth,' may circumstantially evidence 'the state of mind of the declarant,' and, as such, does not constitute 'hearsay'" under Federal Rule of Evidence 801(c). <u>United States v. Quinones</u>, 511 F.3d 289, 312 (2d Cir. 2007) (quoting <u>Smith v. Duncan</u>, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (internal quotation marks omitted)); <u>see also</u> Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted"). Such statements are also admissible under the Rule 803(3) "hearsay exception for declaration of states of mind . . . [because u]nder either theory, a state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved.'" <u>Id.</u> (citation omitted) (alteration in original). Moreover, Mr. Howe's 7:54 PM email in BXK 162 is not hearsay because it is a directive to William Eimicke, not an assertion of truth. <u>See</u> Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."); <u>United States v. Kuthuru</u>, 665 Fed. Appx. 34, 38 (2d Cir. 2016) (summary order) ("Questions and commands are ordinarily not hearsay because they are not offered for the truth of the matter asserted.").

    BKX 162 shows that Mr. Howe instructed Mr. Eimicke to "cover" for him if Mr. Kelly "raise[d] any past commitments" that Mr. Howe had made regarding the status of CPV's efforts

to obtain a PPA.  One of the central defense theories in this case is that Mr. Howe repeatedly lied to Mr. Kelly in order to preserve his monthly consulting payments for his work assisting CPV in obtaining a PPA.  These lies, and their impact on Mr. Kelly's understanding of CPV's likelihood of success in obtaining a PPA, go directly to Mr. Kelly's intent regarding the alleged bribery agreement in this case.  Indeed, BKX 162 demonstrates that, long before the alleged bribery agreement, Mr. Howe was already seeking to mislead Mr. Kelly about CPV's prospects for a PPA, in order to protect his income stream.  See, e.g., United States v. Harris, 733 F.2d 994, 1004–1005 (2d Cir. 1984) (reversing and remanding where district court excluded testimony that defendant said his alleged drug partner was an informant, which went to defendant's state of mind and "would have supported the main theory of the defense").

**3512-14**

Second, we respectfully request that the Court reconsider the preclusion of the following line from page 6 of 3512-14: "Howe needed Eimicke to become familiar with the CPV project so he could support it because he was afraid that Glaser may have spoken to John Dyson, the former head of the New York State Power Authority who had indicated that the CPV project was not a good idea."  (Tr. 3355:21–3358:8).

This statement—from a meeting Mr. Howe had with the Government in June of 2016, far closer in time to the allegations in this case—was admissible at the very least to impeach Mr. Howe's in-court testimony.  Fed. R. Evid. 613(b).  Mr. Howe's in-court testimony was that Mr. Dyson was supportive of CPV's project in New York.  (Tr. 3356:16–19 ("My recollection is that Eimicke had a conversation with Dyson and that, I think as I said earlier, that Dyson was supportive.  I don't know to what degree he was supportive, but he was supportive of the project.")).  This testimony is directly at odds not only with Mr. Howe's statement in 3512-14 (that Mr. Dyson did not think the CPV project was "a good idea") but also with BKX 162, which, as discussed above, shows Mr. Howe asking Mr. Eimicke to "cover" for him regarding any "past commitments" Mr. Howe may have made regarding support from Mr. Dyson and Rich Kessel for the CPV project.  Mr. Howe was shown his prior statement and given the opportunity to explain it, but his explanation did nothing to reconcile the difference between the 3500 material and his testimony.  Given such variance, its impact on Mr. Howe's credibility, and its import to a central theory of the defense (that Mr. Howe repeatedly lied to Mr. Kelly regarding the status of the PPA), the line from 3512-14 should be admissible as a prior inconsistent statement under Rule 613(b).

We respectfully request that the Court reconsider the above rulings.

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP

By: /s/ Daniel M. Gitner

Daniel M. Gitner
Jun Xiang
Samantha Reitz
Rachel Berkowitz

**CC**: All Counsel (Via ECF)